ADAMS *v.* YAZOO & M. V. R. Co.

[76 South. 733, Division B.]

1. CARRIERS. *Passenger trains. Passenger depot. Code* 1906 *sec.* 4867. Where the train upon which plaintiff took passage carried passengers and took on passengers at a point and time in question, it was a passenger train within the meaning of Section 4867, Code 1906, providing that every railroad shall keep rooms open for the reception of passengers at all passenger stations at least one hour before the arrival and one-half hour after the departure of passenger trains; and all reception rooms shall be made comfortable and properly heated.

2. CARRIERS. *Station. Duty of carrier.* Where a station was a regularly established station and the railroad company had a waiting room for passengers and sold tickets, checked baggage, etc., at that point and trains stopped there for passengers on flag and frequently without flagging, plaintiff, an intending passenger, had a right to rely thereon.

3. CARRIERS. *Care of station. Passenger station.* Since under Code 1906, section 4867, so providing, carriers are required to keep "all passenger stations" open and comfortably heated for intending passengers, a regularly established station did not cease to be such within the meaning of the statute because some of its trains only stopped on flag, and the company having invited the public to take passage at that point, it was its duty to keep its waiting rooms open and comfortably heated for passengers about to take its trains.

APPEAL from the circuit court of Bolivar county.

HON. W. A. ALCORN, Judge.

Suit by Geo. M. Adams against the Yazoo & Mississippi Valley Railroad Company. Peremptory instruction for defendant and plaintiff appeals.

The facts are fully stated in the opinion of the court.

*B. B. Carmichael,* for appellant.

Section 4867 provides as follows: "Every railroad shall keep rooms open for the reception of passengers at all passenger stations at least one hour before the arrival, and one-half hour after the departure, of passenger trains; and all reception rooms shall be made comfortable, and shall be kept in a cleanly and decent condition, and properly heated when necessary and properly lighted at night."

This statute is plain and unambiguous and in plain words says: "All passenger stations" and I submit that the courts cannot braid a limitation on it, the word all means "all" and is used to describe all passenger stations and reception rooms where the carrier has a station building. If the legislature had expected to except flag stations it would have said so.

Judge COOK in *Southern Railway* v. *Williams,* 102 Miss. 612, said, it is unnecessary to cite authorities for the statement that the common law, in the absence of any statute requires all common carriers of passengers to keep their waiting room open and comfortably heated for a reasonable time before the arrival and departure of all trains.

In the case of *Metcalf* v. *Yazoo & Miss. Val. R. R. Company,* 97 Miss. 455, 52 So. 355, where the court was construing the various laws relating to depots, waiting rooms, etc., the following is stated which leaves a passenger's rights without cavil. "By section 4854, it is made the duty of every railroad to establish and maintain such depots as shall be reasonably necessary for the public convenience; by section 4867 it is made

the duty of every railroad to keep rooms open for the reception of passengers at least one hour before the arrival and one-half hour after the departure, of all passenger trains.'' Thus the law requires the railroads shall have depots, and that they shall make them comfortable and accessible at reasonable times to intending passengers. It would be useless for the statute to require railroads to keep rooms open for the reception of passengers an hour before the train, unless intending passengers could make lawful use of the rooms within that period of time. When an intending passenger avails himself of the convenience which the law has established for his benefit, and which the railroad must provide, his object being to facilitate and further his purpose to take passage, such person, while on the depot grounds or in the waiting room, is a passenger, and entitled to all the protection of a passenger.

To hold otherwise would place the rights of persons accepting the conveniences provided by law for their benefit in a precarious and uncertain condition, and relieve the railroad company from a duty which they stand under to the traveling public, for which no sensible or just reason can be assigned.

I conceive that the legislature of Mississippi never had in mind that a common carrier should have the right to meet a passenger at the locked door of a waitingroom and inform him that a comfortable place to wait a train was only afforded those who patronized particular trains and invite him to beat a path on the leeward side of the depot until his train arrived, and refused to furnish him any information as to when he could reaonably expect the train; this would be discrimination in the extreme.

While the supreme court never rendered a written opinion in the *Morgan case, supra,* other states having a statute identical with the one in this state have

passed on the liability of the carrier at flag stations, one of which is in Texas. Sales Anno. Stat., article 4524.

The supreme court after the adoption of that statute said: "A railroad company will be held liable to a passenger caused by not having its depot open for the required time at a flag station where it sold tickets and maintained a passenger depot." *St. Louis, etc., R. R. Co.* v. *Rumfield*, 118 S. W. 810.

"A railroad company must furnish suitable waiting rooms for passengers and keep the same open for all regular trains and for trains which stop on signal. *Chicago & Alton R. R. Co.* v. *Walker*, 75 N. E. 520.

"A railroad company agreeing to stop its trains at a station to take a passenger, agrees to keep open its waiting rooms for the accomodation of the passenger while waiting for the train." *Draper* v. *Evansville R. R. Co.*, 74 N. E. 889.

*Mayes, Wells, May & Sanders,* for appellee.

That the court below was correct in his ruling seems to have already been adjudicated by this court in the case of *Greer* v. *Y. & M. V. R. R. Company,* decided November 29, 1909, without a written opinion, Record No. 14985. In that case the peremptory instruction was granted for the defendant; and on appeal to this court the judgment was affirmed.

We respectfully contend that section 4867 is not applicable to any train which stops at a particular station on flag, when the station is not a regular scheduled stop for the train, and when as a matter of special accomodation it has been arranged for the fast trains to stop occasionally.

We direct the attention of the court to some adjudications from other jurisdictions which we think support our contentions. *Railroad Company* v. *Railroad Commission*, 33 So. 219; *Railroad Company* v. *Newell*, 106 Pac., 82, citing *Railroad Co.* v. *State*, 103 Pac. 617.

We have sought but failed to find an adjudicated case identical in all of its aspects, with the case at bar. But there are two decisions from Kentucky which are in point, that state having a statute very similar to ours. *Railroad Co.* v. *Commonwealth,* 43 S. W. 458; *Railroad Co.* v. *Lanhorn,* 167 S. W. 133; *Sandifer Admr.,* v. *Railroad Co.,* 89 S. W. 528; *Chesapeake & Ohio Ry. Co.* v. *Lanhorn,* Court of Appeals of Kentucky, May 29, 1914.

In the instant case, it was shown that Gunnison is a station on the line of the Yazoo and Mississippi Valley Railroad. It is a small, unincorporated village of about three hundred people. At that station a waiting room for passengers is maintained, but during the period from seven o'clock p. m. to seven o'clock a. m. it is not opened or lighted or heated. Only two employees are provided, one being station agent who was also telegraph operator, and the other a negro porter. The hours of service of these two employees is from seven a. m. to seven p. m.

It would be impossible for the carrier to personally notify each and every prospective passenger, which of its stations are flag stations, and which of its trains are due to stop on being flagged. The usual, customary and approved method of importing such information is, by published time cards, which are published and circulated for the information of the traveling public. Indeed in this case the plaintiff admitted that he had the time card and knew by reference to it that Gunnison was a flag stop for that train. The meaning of a "flag stop" for a railroad passenger train, is well known, and when the plaintiff, who was a traveling man and accustomed to reading time tables, saw that Gunnison was a flag stop for the train he admitted that he knew what it meant, and he was bound to take due notice thereof and govern himself accordingly. There was an open restaurant within one hundred feet of the station where he could have gone and been

sheltered and protected, but he chose not to do so. He had no right to expect more than "flag stop" accommodations at that station, because he knew before he went to the station that it was a flag stop for the train. It was not the duty of the carrier at this station to have the waiting room open, heated and lighted, unless it is the legal duty of the carrier to comply with the requirements of the statute (Section 4867 of the Code of 1906) at flag stops, as well as at other stations.

The suit was filed and prosecuted upon the assumption that every statute of the state relating to the operation of railroads, applies to all stations, at all hours of the day or night, without exception and without regard to whether station is a flag stop or a union station. We submit that this assumption is erroneous, as appears by the adjudications of this court, as well as by those of other courts cited *supra*.

ETHRIDGE, J., delivered the opinion of the court.

George M. Adams brought suit against the Yazoo & Mississippi Valley Railroad Company for injuries to his health, alleged to have been caused by exposure to cold weather while waiting for a train at Gunnison, a station on the Yazoo & Mississippi Valley Railroad Company; it being alleged by the plaintiff that the depot of defendant was not open so that the plaintiff could enter it, and that the depot was not properly lighted and heated. Plaintiff alleges that he went to the depot about fifteen minutes before the scheduled time for the arrival of the train; that on reaching the depot the door was locked and the waiting room closed, though the agent of the company was inside at work; that plaintiff beat upon the door and window, trying to attract attention, but that no notice was paid to him. He further alleges and proves that the train was thirty-five minutes late; that the weather was cold, wind blowing, and rain and sleet falling during the

period of his wait; that as a result he was thoroughly chilled, and after taking the train he had a chill, and was confined to a bed on reaching Rosedale until the following evening, when he went to Greenville, and was there confined in his room for a week, after which time he went to Columbus, and was confined to his home for several weeks. It is alleged that the exposure brought on an attack of la grippe and muscular rheumatism; that the health of the plaintiff was permanently injured, his weight greatly reduced, and as a result of the exposure, and ill health resulting therefrom, plaintiff lost his employment as a traveling salesman for a patent medicine manufacturing concern; and also was unable to attend to other business, resulting in losses, according to plaintiff's testimony, of about one thousand, eight hundred dollars per annum.

The exposure complained of occurred on the night of the 18th of March, 1914. The cause was tried at the October, 1915, term of the circuit court. The company filed a plea of general issue only, but defended upon the theory that the station at Gunnison was only a flag stop for the particular train upon which the plaintiff desired to take passage, and that, as a result, they were not required to keep the station open and the reception room properly lighted and heated for passengers for this train. It appeared from plaintiff's testimony that the train stopped without being flagged, and it appeared from the defendant's evidence that the train in question was marked in the schedule timetable as a train that would stop on flag; but it appears that the train actually stopped each evening, except Sundays, to take on mail.

It was contended by the defendant that it could not work its office employees longer than thirteen hours per day, and that to require it to keep the station open and rooms heated for this train, which was scheduled to arrive at 8:52 p. m., would require the employing of extra forces. It developed on trial that the coal used to

make the fire required by statute, to wit, one hour before the arrival of a train, and one-half hour afterwards, would cost about ten cents per day; and that it would require some expense to procure a person to make and attend the fire. Section 4867, Code 1906, is as follows:

"How Rooms to be Kept Open, etc.—Every railroad shall keep rooms open for the reception of passengers at all passenger stations at least one hour before the arrival, and one-half hour after the departure, of passenger trains; and all reception rooms shall be made comfortable and shall be kept in a cleanly and decent condition, and properly heated when necessary, and properly lighted at night. The agent or person in charge shall preserve order, and, if necessary, eject any person whose conduct is boisterous or offensive."

It appears in evidence that the station at Gunnison was a regularly established station, and that the defendant had a waiting room for passengers, and sold tickets, checked baggage, etc., at that point. Was the station at Gunnison a passenger station within the meaning of the statute above quoted, requiring all passenger stations to be kept open, lighted, and made comfortable before the arrival, and after the departure, of a passenger train? The undisputed evidence shows that the train of defendant stopped for passengers on flag, and it seems to have stopped frequently without flagging. This being true, the company invited the traveling public to patronize this station for the purpose of taking this train. It was a train that carried passengers, and took on passengers at this point at the time in question, and was, therefore, a passenger train. We think the plaintiff had a right to rely upon this for the purposes of taking passage on the train.

In the case of *St. Louis, etc., R. Co.* v. *Rumfield*, 55 Tex. Civ. App. 73, 118 S. W. 810, a case similar to this one, a statute of Texas provided:

"Every railroad company doing business in this state shall keep its depots or passenger houses in this state

lighted and warmed and open to the ingress and egress of all passengers who are entitled to go therein for a time not less than one hour before the arrival and after the departure of all trains carrying passengers on such railroad, and every such railroad company for each failure or refusal to comply with the provisions of this article shall forfeit and pay to the state of Texas the sum of fifty dollars, which may be sued for and recovered in the name of said state in any court of competent jurisdiction, and shall be liable to the party injured for all damages by reason of such failure.''

In that case the appellee, Rumfield, who lived about two miles from Smithfield, a station on the line of appellant, was summoned as a venireman to court, and on the morning in question went to the station early in the morning for the purpose of catching the train to Ft. Worth so as to reach there in time for jury service. He did not know the exact time the train was due, but knew that it was early in the morning. He reached the station about five a. m., and found the building dark and the door locked. He tried to arouse the sleeping agent, but failed. The weather was cold and he ''nearly froze while beating a path on the leeward side of the station.'' He renewed his efforts to get a response from the sleeping agent, and finally succeeded in arousing him, but the agent refused to get up, asking who it was. The party told him of his condition and of being cold, but the agent slept on. He finally did arouse the agent, however, a few minutes before the arrival of the train, but stated that he did not get warm until he reached Ft. Worth, where he became sick by reason of the exposure. Suit was brought against the railroad, and a verdict recovered, which was upheld by the supreme court.

In the case of *Chicago, etc., R. Co.* v. *Walker*, 217 Ill. 605, 75 N. E. 520, the supreme court of Illinois held that a railroad company must furnish a suitable waiting room for passengers, and keep the same open for all regular trains and for trains which stop on signals.

In the case of *Williams* v. *Southern Ry. Co.*, 102 Miss. 617, 59 So. 850, this court held that it was the duty of a railroad company, independent of section 4867 of the Code, to keep their waiting rooms open and comfortably heated for a reasonable time before and after the arrival and departure of passenger trains, and that it was a question for the courts to determine as to what is a reasonable time when the statute (section 4867 of the Code) did not apply; that the minimum prescribed by the statute did not govern in all cases, especially in cases where two railroads had a union depot, and a passenger arriving over one road intending to take passage on another should have a room comfortably heated while waiting between trains of the two roads. In that case the statute did not apply, and in the present case the statute does apply; and as the statute uses the term, "all passenger stations," we do not think the station at Gunnison ceased to be a station, within the sense and meaning of the statute, because the train in question only stopped on flag. The company having invited the public to patronize its trains by taking passage thereon, and having erected a station, it was in duty bound to keep its waiting rooms open and heated for the comfort of passengers using said trains.

The court below having given a peremptory instruction for the railroad company, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*